# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SHERRY A. BANKS,
  Plaintiff,

   vs.

COMMISSIONER OF
SOCIAL SECURITY,
  Defendant.

Case No. 1:18-cv-151

Litkovitz, M.J.

**ORDER**

  Plaintiff Sherry A. Banks brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on the Commissioner's memorandum in support of a remand for further proceedings (Doc. 23) and plaintiff's memorandum seeking a reversal for an immediate award of benefits (Doc. 24).

## I. Procedural Background of Administrative Proceedings

  Plaintiff filed an application for disability insurance benefits (DIB) in September 2011, alleging disability beginning on July 29, 2011. Administrative Law Judge (ALJ) Elizabeth A. Motta originally held a hearing on plaintiff's claim on July 3, 2013, and issued a decision denying plaintiff's claim for benefits on July 19, 2013. (Tr. 19-30). Plaintiff appealed ALJ Motta's decision to this Court on August 28, 2014. *See* Case No. 1:14-cv-00691. On September 8, 2015, this Court reversed the ALJ's decision and remanded the matter pursuant to Sentence Four of 42 U.S.C. § 405(g) for further administrative proceedings "with instructions to the ALJ to re-weigh the medical opinion evidence regarding plaintiff's physical impairments in accordance with [the] decision, reconsider plaintiff's credibility and RFC, and further develop the medical and vocational evidence as warranted." (Tr. 522-554).

On remand, ALJ Motta held a second administrative hearing on June 29, 2016 and issued a decision denying plaintiff's claim for benefits on October 26, 2016. (Tr. 369-84). Plaintiff appealed the decision to this Court and filed her statement of errors on July 30, 2018. (Doc. 8). The Commissioner filed a unilateral motion for voluntary remand under sentence four of 42 U.S.C. § 405(g), requesting that the Court enter an order and judgment reversing the ALJ's decision and remanding this matter to the Commissioner for further administrative proceedings and a new decision. The Commissioner conceded that the matter was "improperly decided" by the ALJ and that the ALJ's analysis of plaintiff's fibromyalgia suffers from "fatal errors that require remand." (Doc. 16 at 1). The Commissioner requested a remand so the ALJ could correct her errors and re-evaluate plaintiff's fibromyalgia pursuant to SSR 12-2p; re-evaluate the medical opinions and functional assessments in light of SSR 12-2p; and re-evaluate plaintiff's RFC taking into account all of her impairments. (Doc. 14). Plaintiff opposed the motion for voluntary remand and requested a determination on the merits of her appeal. (Doc. 15).

On May 2, 2019, the Court denied the Commissioner's motion to remand this matter. (Doc. 22). Because the Commissioner concedes that the ALJ's decision was "improperly decided," the only issue in this appeal is whether this matter should be reversed and remanded for rehearing or reversed for an immediate award of benefits. 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). Accordingly, the Court ordered the parties to file supplemental briefs on this remaining issue. This matter is now ripe for resolution.

## II. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A).

The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## III. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The [plaintiff] has not engaged in substantial gainful activity since July 29, 2011, the alleged onset date (20 CFR 404.1571 et seq.).

3. The [plaintiff] has the following severe impairments: degenerative changes of the cervical spine; inflammatory arthritis; fibromyalgia; and mild depression (20 CFR 404.1520(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), subject to the following limitations: lift and carry ten pounds frequently and twenty pounds occasionally; standing and walking limited to four hours combined total in an eight-hour workday; sitting for up to six hours in an eight-hour workday; occasional postural activities, such as climbing stairs/ramps, balancing, stooping, kneeling, crouching, crawling; no climbing ladders, ropes, scaffolds; no exposure to hazards, such as dangerous machinery or unprotected heights; indoor work; overhead reaching limited to frequently bilaterally; simple, repetitive tasks; and no strict production quotas or fast pace.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[1]

7. The [plaintiff] was born [in] . . . 1970 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

[1] Plaintiff's past relevant work was as a licensed practical nurse. (Tr. 382).

10.  Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[2]

11.  The [plaintiff] has not been under a disability, as defined in the Social Security Act, since July 29, 2011, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 371-384).

## IV. This Matter Should be Reversed and Remanded for an Award of Benefits

As indicated, the Commissioner concedes that in denying plaintiff's DIB application, the

ALJ committed errors in evaluating the evidence of plaintiff's fibromyalgia.  (Docs. 14, 16).

Therefore, the only issue in this case is whether this matter should be reversed and remanded for

an outright award of benefits as of plaintiff's alleged onset date of disability or for further

administrative proceedings.

In a case where the final decision of the Commissioner is not supported by substantial

evidence, the Court has authority to affirm, modify or reverse the Commissioner's decision "with

or without remanding the cause for rehearing."  42 U.S.C. § 405(g); *Melkonyan*, 501 U.S. at 100.

Generally, benefits may be awarded immediately "only if all essential factual issues have been

resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v.*

*Sec. of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927

(6th Cir. 1990); *Varley v. Sec. of H.H.S.*, 820 F.2d 777, 782 (6th Cir. 1987).  The Court may

award benefits where the proof of disability is strong and opposing evidence is lacking in

substance, so that remand would merely involve the presentation of cumulative evidence, or

where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v.*

*Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled jobs at the light level of exertion such as cashier, merchandise marker, and assembler.  (Tr. 383).

The Commissioner concedes that a remand is necessary in this case because the ALJ's analysis of plaintiff's fibromyalgia[3] suffered from "some fatal errors that require remand." (Doc. 23 at 2). The Commissioner asserts, however, that this case is not so clear cut as to require a judicial award of benefits. The Commissioner alleges that the ALJ properly relied on the opinions of two consultative psychologists and four reviewing psychologists, as well as one consultative physician and four reviewing physicians, and all eleven of these doctors opined that plaintiff was able to work so long as she had restrictions. (Doc. 23 at 8, citing SSR 96-6p ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.")). According to the Commissioner, these eleven physicians opined that plaintiff was not disabled, and while these opinions conflict with those of plaintiff's physicians, this conflict in the evidence is one which should be addressed by the ALJ in the first instance. The Commissioner asks this Court to remand for further proceedings and instruct the Agency to explicitly re-evaluate plaintiff's fibromyalgia pursuant to SSR 12-2p; re-evaluate the medical opinions and functional assessments in light of SSR 12-2p; and re-evaluate plaintiff's RFC taking into account all of her impairments.

Plaintiff requests a reversal and remand solely for a calculation and award of benefits. Plaintiff contends the evidence is consistent that she cannot sustain a 40-hour work week and is disabled. Plaintiff alleges that she does not dispute the ALJ's findings regarding the severity of her psychiatric impairments. (Doc. 24 at 2). Six of the eleven doctors referenced by the

---

[3] Social Security Ruling (SSR) 12-2p, which provides guidance on how the agency both develops "evidence to establish that a person has a medically determinable impairment of fibromyalgia" and evaluates fibromyalgia in disability claims, describes fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3017612 (July 25, 2012).

Commissioner are psychologists. Plaintiff therefore contends that their opinions are not relevant to whether this matter should be remanded for an award of benefits. Of the five remaining physicians, two of them – Drs. Klyop and Sutherland – were never mentioned by the ALJ in her decision or given any probative weight. Plaintiff alleges the Court should not review their opinions in the first instance in determining the remand issue in this case. Plaintiff alleges that the only medical evidence that contradicts a finding that plaintiff is physically disabled and that was given any probative weight by the ALJ are reports from Drs. Torello and Bertani, the State Agency non-examining reviewers, and Dr. Swedberg, a one-time consultative examining physician. Plaintiff contends there is no reason to give these opinions any weight under the regulations or case law; the Commissioner has failed to provide the Court with any reason why those opinions have become more reliable simply because of the passage of time since this matter was first remanded; and the Commissioner has failed to give any reasons in her supplemental briefing why the opinions from the non-treating consultants merit more weight than the opinions from plaintiff's treating physician, Dr. Jeffrey Jarrett, M.D.

For the reasons that follow, the Court concludes that this matter should be reversed and remanded for an award of benefits because the evidence of disability is strong and the opposing evidence is lacking in substance. *Faucher*, 17 F.3d at 176.

### A. Evidence prior to alleged disability onset date

Plaintiff does not dispute the ALJ's findings on plaintiff's psychiatric impairments. Therefore, the Court will limit its review to plaintiff's physical impairments – specifically her fibromyalgia impairment.[4]

---

[4] The Court recognizes that an individual with fibromyalgia may demonstrate mental symptoms, such as depression. Nevertheless, the Court finds the physical manifestations of plaintiff's fibromyalgia impairment, even without consideration of her psychiatric impairments, warrant a reversal for an award of benefits.

Plaintiff's long-time treating physician, Jeffrey Jarrett, M.D., has treated plaintiff since 1999. (Tr. 358). Plaintiff worked as a licensed practical nurse for 25 years. In 2008 and 2009, when plaintiff was still working as a nurse, Dr. Jarrett reported that plaintiff began experiencing increased low back, hip, neck, and shoulder pain. (Case No. 1:14-cv-691, Tr. 278-79, 289-80, 287, 310).[5] Plaintiff was treated with Percocet, Celebrex, Flexeril, and physical therapy, which was subsequently discontinued per the therapist's advice because plaintiff had "too much discomfort and too much difficulty with her doing therapy with increased pain." (Case No. 1:14-cv-691, Tr. 279).

On May 23, 2010, plaintiff reported increased pain "all over" with tightness in the neck and upper back, difficulty sleeping, and irritable mood. (Case No. 1:14-cv-691, Tr. 277). Examination revealed "a lot of muscle tenderness in the upper back, arms, [and] chest," and Dr. Jarrett diagnosed myalgias, arthralgias, fatigue, and scapular pain and noted that "[f]ibromyalgia comes to mind as [a] strong possibility." (*Id.*). In July 2010, plaintiff reported that she was "not doing well at all" due to chronic pain. (Case No. 1:14-cv-691, Tr. 275). She reported an extreme adverse reaction to taking Lexapro for a month, relating that her husband "found her crawling on all fours, screaming and banging her head on the wall." (*Id.*). Plaintiff stopped taking Lexapro and had no further problems. (*Id.*). On examination, plaintiff had poor range of motion and a lot of back tenderness. Dr. Jarrett diagnosed chronic headache and chronic back pain causing significant depression. (*Id.*).

In October 2010, plaintiff treated with Matthew Hodges, D.O., of the Orthopaedic Institute of Dayton, and reported "multiple pain complaints." (Case No. 1:14-cv-691, Tr. 308-09). Plaintiff reported that her primary complaint was low back pain radiating into both hips,

---

[5] This evidence is included in the present record, albeit at different transcript cites.

greater on the left. (Case No. 1:14-cv-691, Tr. 308). On examination Dr. Hodges found "15 out of 18 tender points diagnostic with two negative control points for the criteria for fibromyalgia." (*Id*.). Dr. Hodges also found 5/5 strength in all extremities, well preserved reflexes, and diffuse tenderness even to light touches, "almost hyperalgesic." He noted that plaintiff was tearful on two occasions during the interview. (*Id*.). Dr. Hodges diagnosed fibromyalgia syndrome with attendant multiple aches and pains, chronic opiate therapies, and likely overlay of depression. (Case No. 1:14-cv-691, Tr. 309).

In November 2010, Dr. Hodges found tenderness on palpation across plaintiff's trapezius and rhomboids and he provided some gentle range of motion and myofascial release which plaintiff tolerated quite well. (Case No. 1:14-cv-691, Tr. 307). December 2010 treatment notes reflect similar findings and treatment and plaintiff was advised to begin a regular walking, cycling, or pool exercise program. (Case No. 1:14-cv-691, Tr. 306). In January 2011, plaintiff reported a recent flare up of her fibromyalgia. (Case No. 1:14-cv-691, Tr. 305). Plaintiff had 5/5 strength throughout the lower extremities, symmetric reflexes at the patella, tenderness on palpation across her lumbar paraspinals, and some limited passive joint play in the lumbosacral spine. (*Id*.). Dr. Hodges recommended physical therapy for myofascial release with the goal of moving into a progressive cardiovascular program to address plaintiff's fibromyalgia symptoms. (*Id*.). She was continued on her current medication regime of Cymbalta, Relafen, and Ultram. (*Id*.).

When seen by Dr. Jarrett on February 8, 2011, plaintiff reported increasing back and hip pain and mood problems due to pain and stress. Dr. Jarrett noted that plaintiff had been seeing Dr. Hodges without much improvement. On examination, Dr. Jarrett found decreased range of motion of the back with extension and pain on extreme range of motion in all directions;

tenderness of the left hip above the greater trochanter; some tenderness in the lower back area; and tenderness of the right paraspinal scapular area. Plaintiff was tearful when discussing her mood. Dr. Jarrett diagnosed muscular scapula pain, chronic low back pain, left hip pain, and depression. Dr. Jarrett added Abilify to her regimen of Tramadol and Ultram. (Case No. 1:14-cv-691, Tr. 273).

A February 9, 2011 MRI of plaintiff's pelvis showed mild degenerative changes and no acute bony abnormalities of the lumbar spine. (Case No. 1:14-cv-691, Tr. 285-86)

On April 8, 2011, plaintiff reported that her pain had increased and that she was missing more work and having problems sleeping. Her examination was "unchanged," with evidence of "a lot" of tenderness in the back, shoulders, and chest. Dr. Jarrett diagnosed chronic back pain and prescribed a new sleep aid medication. (Case No. 1:14-cv-691, Tr. 272).

### B. Evidence after alleged disability onset date

Plaintiff alleges a disability onset date of July 29, 2011, which is consistent with Dr. Jarrett's statement that he had "taken her off work in August of 2011." (Tr. 290).

In a letter dated August 10, 2011, Dr. Jarrett reported that he treated plaintiff for chronic low back pain, fibromyalgia, chronic left hip pain, and depression. Dr. Jarrett stated that due to plaintiff's "diagnoses, and progressive and debilitating course, [plaintiff] is unable to work. Her disabilities are permanent, and will not improve to the point that she will be able to return to any type of gainful employment." (Case No. 1:14-cv-691, Tr. 300).

Plaintiff was seen for follow-up on October 24, 2011 for back pain, fibromyalgia, neck pain, and depression. Her examination was unchanged and Dr. Jarrett opined that plaintiff was "quite disabled" and not expected to improve. (Case No. 1:14-cv-691, Tr. 299).

On October 30, 2011, Dr. Jarrett completed a Multiple Impairment Questionnaire on plaintiff's behalf. (Case No. 1:14-cv-691, Tr. 291-98). Dr. Jarrett listed plaintiff's diagnoses as chronic low back pain, chronic left hip pain, fibromyalgia, depression, and chronic headaches and in support cited to clinical findings of multiple areas of tenderness in the neck, thoracic spine, and lumbosacral spine and the results from the cervical spine MRI showing disc disease. (Case No. 1:14-cv-691, Tr. 291). Plaintiff's prognosis was noted as "poor." (Id.). Plaintiff's primary symptoms were reported as dull to occasionally severe and sharp low back/mid-back pain, aching neck pain on the left, dull and sharp bilateral shoulder pain, severe fatigue and tiredness, severe and dull migraine headaches, and left hip pain. (Case No. 1:14-cv-691, Tr. 292). Dr. Jarrett rated plaintiff's low back pain and mid/upper back pain as moderately severe, eight on a 10-point scale, and her shoulder pain as severe, 10 on a 10-point scale. (Case No. 1:14-cv-691, Tr. 293). Plaintiff's fatigue was rated as moderately severe, seven to eight on a 10-point scale. (Id.). Dr. Jarrett opined plaintiff was able to sit three hours total and stand/walk one hour total in an eight-hour workday. She also needed to get up and move around every 30 minutes when sitting and not sit again for five to 10 minutes. (Case No. 1:14-cv-691, Tr. 293-94). Dr. Jarrett further opined that plaintiff could occasionally lift and carry up to 20 pounds, but she had significant limitations in performing repetitive reaching, handling, fingering, and lifting due to fatigue and pain. (Case No. 1:14-cv-691, Tr. 294). Dr. Jarrett found that plaintiff was markedly limited from using her upper extremities for reaching and moderately limited from using the upper extremities for fine manipulations. (Case No. 1:14-cv-691, Tr. 295). Dr. Jarrett reported that plaintiff's medications caused fatigue and that she had also been treated with physical therapy, multiple spine injections, water therapy, and chiropractic treatment. (Id.). Dr. Jarrett assessed that plaintiff would experience an increase of symptoms if placed in a

competitive work environment and her pain, fatigue, or other symptoms were constantly severe enough to interfere with attention and concentration. (Case No. 1:14-cv-691, Tr. 295-96). Dr. Jarrett further reported that depression contributed to plaintiff's symptoms and functional limitations. (Case No. 1:14-cv-691, Tr. 296). Dr. Jarrett opined that plaintiff required unscheduled breaks to rest every 20 minutes for five to 10 minutes each time, and he estimated that plaintiff would miss work more than three times each month as a result of her impairments or treatment. (Case No. 1:14-cv-691, Tr. 296-97). Dr. Jarrett further opined that plaintiff had additional psychological limitations and was precluded from pushing, pulling, kneeling, bending, and stooping. (Case No. 1:14-cv-691, Tr. 297).

In a letter dated November 16, 2011, Dr. Jarrett reported that plaintiff had been under his care for many years and "began several years ago having increasing problems with migraine headaches that eventually combined with chronic neck pain, depression and disabling back pain." (Case No. 1:14-cv-691, Tr. 290). Dr. Jarrett stated:

> Her present diagnoses include chronic low back pain, chronic cervical neck pain, migraine headaches, major depression and fibromyalgia. She has undergone thorough evaluations by multiple physicians and her diagnoses have been confirmed and have been aggressively treated. Her physical exams show poor range of motion of her cervical neck as well as her lower back. She has chronic tenderness in both her neck and her lower back. She has scoliosis of her thoracic back.

> She is presently on Cymbalta for depression and Tramadol ER for her chronic pain. We have attempted physical therapy and spinal injections, all unfortunately have failed to keep her pain controlled to the point where she would be able to return to work. Her office visits occur every two to six months and more often if needed. The medications prescribed often have failed to control her pain and because of the chronic pain we have had some additional difficulty treating her depression. She is a nurse and has been in a very stressful environment which affects her medical condition even more intensely. She is now limited to very low stress situations, no prolonged standing, walking or prolonged sitting.

> Her prognosis for recovery is quite poor. It is important to note that since I have taken her off work in August of 2011, she has had intermittent slight improvement

in her pain and as a positive she has had no further worsening of her pain. I do not feel she could ever return to full time competitive work in any working conditions. Her disability is permanent.

(Case No. 1:14-cv-691, Tr. 290).

In December 2011, Dr. Hodges examined plaintiff again. (Case No. 1:14-cv-691, Tr. 319-20). Plaintiff had 5/5 strength in all extremities and her deep tendon reflexes were preserved and intact throughout the upper extremities as well as the patella and the Achilles. (Case No. 1:14-cv-691, Tr. 319). Reflexes were absent at the left hamstring, obtainable at the right; straight leg raising was positive on the left and negative on the right; hip range of motion was intact; and Patrick's test was negative. (*Id.*). Dr. Hodges noted that x-rays indicated spondylosis in the low back. (*Id.*). Dr. Hodges diagnosed left hip pain, L5 lumbar radiculitis; lumbar spondylosis, question if overriding disc protrusion; and fibromyalgia syndrome. (*Id.*).

After reviewing the record in February 2012, state agency physician Lynne Torello, M.D., opined that plaintiff could lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; sit about six hours in an eight-hour work day; and stand and/or walk about two hours in an eight-hour work day. (Case No. 1:14-cv-691, Tr. 76). Dr. Torello also found that plaintiff could frequently climb ramps/stairs, stoop, kneel, crawl and crouch, and occasionally climb ladders/rope/scaffolds. (*Id.*). Dr. Torello based plaintiff's postural limitations on plaintiff's fibromyalgia. (Case No. 1:14-cv-691, Tr. 76-77). Dr. Torello found plaintiff was only partially credible, noting that plaintiff's most recent examination showed she has full strength and good range of motion. (Case No. 1:14-cv-691, Tr. 75). Leanne Bertani, M.D., a state agency physician, reviewed the record in August 2012 upon reconsideration and affirmed Dr. Torello's assessment as to plaintiff's exertional limitations. (Case No. 1:14-cv-691, Tr. 88-89).

At a September 4, 2012 follow-up with Dr. Jarrett, plaintiff reported problems with tingling in her hands, thigh weakness, and burning in her feet. On examination, plaintiff exhibited a positive Tinel's and Phalen's on the right and possibly decreased sensation in the feet. Dr. Jarrett diagnosed paresthesias in the feet and carpal tunnel syndrome on the right and very mildly on the left. (Case No. 1:14-cv-691, Tr. 353). On April 4, 2013, plaintiff complained of pain in her feet and examination revealed tenderness in the right medial heel area and much less on the left, and Dr. Jarrett diagnosed plantar fasciitis. (Case No. 1:14-cv-691, Tr. 352). On April 30, 2013, plaintiff was seen for "mood issues," fatigue, tearfulness, and anger. Dr. Jarrett diagnosed depression and prescribed psychotropic medication. (Case No. 1:14-cv-691, Tr. 351).

On June 4, 2013, Dr. Jarrett wrote a third opinion letter. Dr. Jarrett reiterated plaintiff's symptoms of back, neck, shoulder, and hip pain, daily headaches, severe fatigue, and migraine headaches. Dr. Jarrett opined that plaintiff's "symptoms and functional limitations are reasonably consistent with her physical impairments." (Case No. 1:14-cv-691, Tr. 358). Dr. Jarrett reported that plaintiff's pain occurs on a daily basis. He rated her low back pain as an eight out of ten, mid/upper back pain as an eight out of ten, shoulder pain as a ten out of ten, and fatigue as a seven to eight out of ten. He opined that plaintiff could sit for three hours and stand/walk for one hour in an eight-hour work day, and he did "not medically recommend for [plaintiff] to sit, stand, or walk continuously in a work setting." (*Id.*). He further opined that if sitting, plaintiff would need to get up every 30 minutes for five to 10 minutes before sitting again. Dr. Jarrett found that plaintiff was significantly limited in her ability to do repetitive reaching, handling, fingering, and lifting, and markedly limited in her ability to use her arms for reaching, including overhead. Dr. Jarrett noted that plaintiff's prognosis was "quite poor" and that she has had intermittent and slight improvement since he took her off work in August 2011.

Dr. Jarrett stated that plaintiff "is not a malingerer" and he re-endorsed his opinion as set forth in the October 2011 Multiple Impairment Questionnaire and narrative report of November 2011. (Case No. 1:14-cv-691, Tr. 358-59).

### C. Evidence after First Court Remand

On July 14, 2014, plaintiff was seen for fatigue and pain in her hips and legs. (Tr. 888-889). Her pain was rated as 7 to 9 on a 10-point scale, and it increased with changes from a sitting to standing position. (Tr. 889). Dr. Jarrett's physical examination revealed proximal leg muscular tenderness, lateral hip and posterior hip tenderness, and muscular tenderness in the upper back. (Tr. 888). Dr. Jarrett diagnosed fibromyalgia, fatigue, and insomnia and prescribed Meloxicam and Trazodone. *Id.*

On August 28, 2014, plaintiff was seen for an arthritis consultation upon referral from Dr. Jarrett due to symptoms of diffuse joint pain. (Tr. 790). She also described associated symptoms of fatigue, dizziness, headaches, paresthesias, weakness, and depression. *Id.* A physical examination revealed decreased motion in the left elbow, pain in the left elbow/forearm, and tenderness in fibromyalgia tender points and the SI joints. (Tr. 791). Plaintiff was diagnosed with joint pain in multiple sites, fibromyalgia, and nail pitting (a sign of psoriasis). *Id.* Plaintiff was prescribed Diclofenac and sent for blood testing. (Tr. 792).

At a follow-up with Dr. Jarrett on October 13, 2014, plaintiff described left hip pain that was "nearly constant and quite intense." (Tr. 892). She also had aching in her right rib area and problems sleeping. *Id.* An exam was notable for evidence of significant tenderness in the left hip laterally and anteriorly with decreased motion. (Tr. 891). Dr. Jarrett diagnosed chronic left hip pain, psoriatic arthritis, fatigue, and insomnia. *Id.* When seen on October 28, 2014, a

physical exam revealed multiple areas of tenderness in the upper arms, upper chest, and upper back in the cervical/neck area, as well as severely restricted motion of the left hip. (Tr. 894).

Dr. Swedberg consultatively examined plaintiff on behalf of the Social Security Administration on January 7, 2015. (Tr. 807). Plaintiff reported disability primarily due to fibromyalgia with generalized aching pain in her muscles and joints. *Id.* Her physical examination was essentially normal, with the exception of left knee crepitus. (Tr. 808-809). Dr. Swedberg diagnosed a history of ("h/o") fibromyalgia and obesity. (Tr. 809). Dr. Swedberg opined that plaintiff could perform a "moderate" amount of sitting, standing, ambulating, bending, kneeling, pushing, pulling, lifting, and carrying. *Id.* X-rays of the left hip showed "very early degenerative findings." (Tr. 810). X-rays of the lumbar spine showed mild degenerative spurring. (*Id.*).

When seen by Dr. Jarrett on April 6, 2015, plaintiff reported no improvement in her pain, and she was not sleeping well because of pain in her back, joints, and muscles. She was very limited in her activity level due to increased pain and fatigue. (Tr. 897-899). Dr. Jarrett started her on Fentanyl patches. (Tr. 899).

On January 5, 2016, plaintiff was evaluated by rheumatologist Chacko Alappatt, M.D. (Tr. 819-821). Plaintiff described diffuse pain, primarily in her knees and back, as well as morning stiffness. (Tr. 819). Dr. Alappatt's exam revealed nail pitting, fibromyalgia tender points and tenderness in the SI joints, decreased motion in the left elbow with pain, pain with motion in the spine, and crepitus in the knees. (Tr. 821). The rheumatologist diagnosed psoriatic arthritis, chronic back pain, and chondromalacia. (Tr. 821, 820).

In a letter dated March 18, 2016, Dr. Alappatt reported that plaintiff had symptoms of joint pain, muscle pain, joint swelling, muscle weakness, and fatigue due to inflammatory

arthritis. (Tr. 817). Despite some response to treatment, Dr. Alappatt opined that plaintiff was unable to participate in a competitive work environment. *Id.*

At a visit with Dr. Jarrett on April 28, 2016, plaintiff described "progressively more pain" and reported she was getting "very little relief with her medications." (Tr. 901). She also felt fatigued and was not sleeping well due to her pain. *Id.* On exam, Dr. Jarrett reported evidence of multiple areas of tenderness in the upper back and the lower back paraspinal musculature, tenderness in both wrists and shoulders, left knee tenderness, and mildly diminished motion in the neck. (Tr. 900). Dr. Jarrett assessed psoriatic arthritis, chronic low back pain, fibromyalgia, chronic fatigue, depression, and left patella chondromalacia. *Id.*

In a letter dated May 31, 2016, Dr. Jarrett opined plaintiff was disabled due to a combination of fibromyalgia, psoriatic arthritis, chronic left hip pain, chronic fatigue, insomnia, depression, and chronic back pain. (Tr. 885). Dr. Jarrett opined that as a result of her impairments, plaintiff was "extremely restricted" in even "normal daily activities" and could not sustain competitive work for more than 30-minute time periods. He opined that this condition was expected to be permanent. *Id.*

In a Disability Impairment Questionnaire dated May 31, 2016, Dr. Jarrett listed plaintiff's diagnoses as fibromyalgia, left hip pain, hypertension, chronic fatigue, psoriatic arthritis, and chronic persistent insomnia. (Tr. 879). The clinical and diagnostic testing supporting these diagnoses included severely decreased motion in the left hip, spasms in the lumbosacral spine with poor range of motion, and multiple tender areas (trigger points) in her upper extremities, upper back, and neck. *Id.* Plaintiff's primary symptoms were left hip pain, bilateral knee pain, right shoulder pain, cervical and lumbar back pain, and headaches related to muscle pain. (Tr. 880). The treating doctor stated that the symptoms and limitations described in the report had

been present since July 2011. (Tr. 883). Dr. Jarrett opined plaintiff was able to sit 4 hours total and stand/walk for 1 hour total in an 8-hour workday. (Tr. 881). When sitting, plaintiff needed to get up and move around every 30 minutes and not sit again for 10 minutes. She could lift and carry 10 pounds occasionally. *Id.* Dr. Jarrett stated that plaintiff could never/rarely: perform fine manipulations with both upper extremities; grasp, turn or twist with the left upper extremity; and use the left arm for reaching overhead. (Tr. 882). Dr. Jarrett opined that plaintiff's pain, fatigue, or other symptoms were frequently severe enough to interfere with attention and concentration (from 1/3 to 2/3 of an 8-hour workday); she needed rest breaks every 30 minutes during an 8-hour workday for 10 minutes each time; and she would miss work, on average, more than three times per month. (Tr. 883).

### D. Resolution

The Commissioner concedes that the ALJ's analysis of plaintiff's fibromyalgia "suffer[s] from some fatal errors" and cannot be upheld. (Doc. 23 at 2). Indeed, in declining to give Dr. Jarrett's opinions controlling or even deferential weight, it appears the ALJ relied heavily on the relatively "normal" and "mild" clinical and objective findings of record (Tr. 378-380), which is contrary to the controlling authority in this Circuit.

The Sixth Circuit requires an ALJ to "give due consideration to [a plaintiff's] diagnosis of severe fibromyalgia," and has "repeatedly recognized that fibromyalgia can be a severe and disabling impairment." *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 434 (6th Cir. 2013) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (in turn citing *Preston v. Sec'y of H.H.S.,* 854 F.2d 815, 820 (6th Cir. 1988) (per curiam)); *see also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859-60 (6th Cir. 2011); *Germany–Johnson v. Comm'r of Soc. Sec.,* 313 F. App'x 771, 778 (6th Cir. 2008) (per curiam)). Fibromyalgia "causes severe

musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances."
*Preston*, 854 F.2d at 817. "[D]isability claims related to fibromyalgia are related to the
*symptoms* associated with the condition - including complaints of pain, stiffness, fatigue, and
inability to concentrate - rather than the underlying condition itself." *Kalmbach*, 409 F. App'x at
862 (emphasis in original) (citing *Rogers,* 486 F.3d at 247) (citing 20 C.F.R. § 416.929); *Wyatt v.
Sec'y of Health & Human Servs.,* 974 F.2d 680, 686 (6th Cir. 1992) (noting that subjective
complaints of pain may support a claim for disability)). *See also* SSR 12-2p (listing among the
diagnostic criteria for fibromyalgia a history of widespread pain and other symptoms, including
manifestations of fatigue, waking unrefreshed, anxiety disorder, and irritable bowel syndrome).
"[U]nlike medical conditions that can be confirmed by objective testing, fibromyalgia patients
present no objectively alarming signs," *Rogers*, 486 F.3d at 243, and patients "demonstrate
normal muscle strength and neurological reactions and can have a full range of motion. . . ."
*Minor*, 513 F. App'x at 434. The Sixth Circuit has recognized that fibromyalgia is not amenable
to objective diagnosis and standard clinical tests such as x-rays and CT scans are "not highly
relevant in diagnosing [fibromyalgia][6] or its severity." *Preston*, 854 F.2d at 820. The Court in
*Preston* explained: "In stark contrast to the unremitting pain of which [fibromyalgia] patients
complain, physical examinations will usually yield normal results - a full range of motion, no
joint swelling, as well as normal muscle strength and neurological reactions. There are no
objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by
exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is
characteristic in [fibromyalgia] patients." *Id*. at 817-18. "Fibromyalgia's 'causes are unknown,
there is no cure, and, of greatest importance to disability law, its symptoms are entirely

---

[6] The Sixth Circuit in *Preston* used the term "fibrositis." The preferred term is currently fibromyalgia rather than the older terms fibrositis and fibromyositis. *See* "The Merck Manual" (17th ed. 1999), p. 481.

subjective.'" *Minor*, 513 F. App'x at 434-35 (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).

By giving only "some" weight to the opinions of Dr. Jarrett because there was "very little objective evidence" on Dr. Jarrett's exams (Tr. 380), the ALJ once again misapprehended the nature of plaintiff's fibromyalgia impairment and failed to properly assess the weight to afford the treating physician's opinions.[7] The Social Security Administration recognizes the importance of longitudinal evidence for individuals with fibromyalgia "in establishing both the existence and severity of the impairment" because "the symptoms of FM [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p, 2012 WL 3104869, at *3, *6. At the time of the ALJ's decision, Dr. Jarrett had treated plaintiff's fibromyalgia for over five years, and he consistently assessed plaintiff's physical functioning as restricted to less than sedentary work. Even before plaintiff stopped working, Dr. Jarrett suspected plaintiff's symptoms were attributable to fibromyalgia, which was later confirmed by Dr. Hodges. The opinions of Dr. Hodges and rheumatologist Dr. Alappatt are consistent with Dr. Jarrett's opinions and support the limitations assessed by Dr. Jarrett. The only contrary evidence in the record is from the two non-examining state agency physicians, Drs. Torello and Bertani, who reviewed only a limited portion of Dr. Jarrett's treatment records prior to August 2012 and who did not review any of Dr. Jarrett's opinions on plaintiff's functional capacity, and the opinion of Dr. Swedberg, the consultative examiner, whose "dearth" of objective findings on examination (Tr. 377) were actually consistent with plaintiff's fibromyalgia impairment under the controlling

---

[7] In plaintiff's previous case before this Court, the Court determined that the ALJ erred in weighing the opinions of Dr. Jarrett by, among other reasons, focusing heavily on the lack of objective or diagnostic evidence supporting the limitations assigned by Dr. Jarrett and by mistakenly stating there was no evidence of "tender points" in the record to support a diagnosis of fibromyalgia, contrary to the records of Dr. Hodges. *See* Case No. 1:14-cv-691 (Docs. 11, 12).

case law.[8] Given the importance of the longitudinal evidence in fibromyalgia cases, the opinions of the state agency physicians and the report of the one-time consultative examiner do not constitute substantial evidence that is inconsistent with Dr. Jarrett's opinions. Dr. Jarrett employed multiple treatment modalities in assessing and treating plaintiff's fibromyalgia and referred plaintiff to various specialists. The longitudinal evidence documents diffuse pain, fatigue, insomnia, and trigger points, which support Dr. Jarrett's opinions of debilitating limitations. Where, as here, the opinion of the treating physician "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "is not inconsistent with the other substantial evidence in [the] case record," *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)), the opinion is entitled to controlling weight.

Plaintiff's disability claim has been pending for eight years, and the instant record is fully developed. Dr. Jarrett's opinions limiting plaintiff to less than sedentary work with additional restrictions is consistent with longitudinal record evidence documenting plaintiff's fibromyalgia impairment. The vocational expert testified that the restrictions imposed by Dr. Jarrett would preclude substantial gainful employment. (Tr. 466-68). In this case, "the proof of disability is strong, and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence. . . ." *Kalmbach*, 409 F. App'x at 865 (citing *Faucher*, 17 F.3d at 176).

---

[8] The ALJ's decision makes no mention of the opinions of state agency doctors Klyop and Sutherland and the Court declines to consider these opinions in the first instance.

**IT IS THEREFORE ORDERED:**

The decision of the Commissioner is **REVERSED** and **REMANDED** to the

Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) for the limited purpose of

granting an award of benefits as of the disability onset date of July 29, 2011.

Date: _9/16/19_

Karen L. Litkovitz
United States Magistrate Judge